UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00293-SB |
| Plaintiff, | |
| v. | ORDER DENYING MOTION FOR INDICATIVE RULING [DKT. NO. 150] |
| MAHSA PARVIZ, | |
| Defendant. | |

Defendant Mahsa Parviz was convicted of two felonies for presenting false information to get an emergency passport for her biological daughter (C.P.) as part of a kidnapping scheme. At the time of the incident, Defendant's parental rights had been terminated and she was restrained from contacting C.P. Several months ago, Defendant was sentenced to 61 months' imprisonment, and she filed a notice of appeal soon after. She now seeks to be released under 18 U.S.C. § 3582(c)(1) in light of her medical conditions and the related medical risks posed by the COVID-19 pandemic. Dkt. No. 150. Because any motion for compassionate release in this court is barred by her pending appeal, Defendant seeks a ruling pursuant to Federal Rule of Criminal Procedure 37 and Federal Rule of Appellate Procedure 12.1 indicating that the Court would grant her motion for early release. For the following reasons, the Court DENIES Defendant's motion.

I.

In June 2019, Defendant applied for an emergency passport for C.P. She supported her request with a letter allegedly written by a medical provider claiming that C.P. required emergency medical treatment outside the country and a flight itinerary purporting to show she and C.P. were scheduled to leave immediately for that surgery. The emergency application was granted, and Defendant received a passport for C.P. Dkt. No. 125 (Amended PSR) ¶¶ 6–10. After receiving the passport, Defendant flew to Texas in furtherance of a scheme to kidnap C.P. but

1

was apprehended by the local police before she could take C.P.  The police searched her car and found packed suitcases, international travel documents (including C.P.'s passport), and written notes detailing Defendant's criminal plan to take C.P. to another country.  PSR ¶ 38.  Defendant was charged with two felonies:  making a false statement in an application for a U.S. passport and aggravated identity theft.  Dkt. No. 1.  At trial, the Government presented evidence that Defendant's parental rights had been terminated, the letter was false, and that Defendant had forged the medical provider's signature on it.  A jury found Defendant guilty on both counts.  Dkt. No. 69.  Defendant has an extensive criminal history:  she previously had been convicted of crimes for abandoning or endangering a child; attempted kidnapping of her nephew and, in a separate incident, of C.P; tampering with a government record; and forgery of a financial instrument.  PSR ¶¶ 31–38.  She also has a history of filing false police reports.  PSR ¶¶ 43–46.  Accordingly, Defendant had a category VI criminal history at sentencing, PSR ¶ 41, and has been designated as having a high risk of recidivism if released, Dkt. No. 155-4 (Ex. C).

Defendant's projected release date is December 7, 2025, and she has served approximately 30% of her 61-month sentence.  Dkt No. 155-3 (Ex. A) at 5.  While Defendant's motion describes a litany of health issues, including "seizures, asthma, hypertension[], heart disease (atrial fibrillation), fibromyalgia, migraines, syncope, chronic pain, and paroxysmal loss of function in the lower extremities," her primary complaint is related to the breast implants she received after a partial mastectomy in 2007.  Dkt. No. 150 at 4.  She alleges that in August 2021, during her incarceration, one of the implants ruptured.  She states she "has since had severe breast and chest pain," "suffers from capsular contracture," and that surgery is necessary.  *Id*.  Defendant submitted no evidence of her medical conditions with her motion.[1]  *See id*.

---

[1] Instead, Defendant attached evidence that she relies upon to relitigate the question whether she still has parental rights to C.P. and to request permission to contact C.P. if her motion is granted.  Dkt. No. 150 at 8–9 & 15–32.  Defendant's use of this motion to reargue a previously resolved issue is improper and demonstrates her continued persistence.

II.

A.

Generally, "the filing of a notice of appeal divests a district court of jurisdiction over those aspects of the case involved in the appeal." *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997).  However, under Federal Rule of Criminal Procedure 37, district courts have the authority to (1) make an "indicative ruling" that it would grant the motion while an appeal is pending, (2) to defer consideration of the motion, or (3) deny the motion.  Fed. R. Crim. P. 37(a).  "[I]f the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings . . . ."  Fed. R. App. P. 12.1(b).  The district court may then "decide the motion if the court of appeals remands for that purpose."  Fed. R. Crim. P. 37(c).

B.

Defendant seeks an indicative ruling that the Court would grant a motion for compassionate release.  The general rule is that "[a] judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (cleaned up).  The defendant bears the burden to produce evidence establishing entitlement to a sentence reduction.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA),  provides a narrow exception to the general prohibition on modifying sentences:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    Extraordinary and compelling reasons warrant such a reduction;
>
> . . .

> And that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

A court conducts a three-step inquiry when an inmate seeks compassionate release under § 3582(c)(1)(A). First, the defendant must exhaust her administrative rights with the Bureau of Prisons (BOP). Second, the defendant must establish "extraordinary and compelling reasons" for the requested sentence reduction and that the reduction is consistent with the U.S. Sentencing Commission's policy statement.[2] Third, the Court must consider the sentencing factors in Section 3553(a) to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Aruda*, 993 F.3d 799–801 (describing the FSA's requirements).

### III.

The Government concedes that Defendant has exhausted her administrative rights with the BOP but correctly argues that Defendant's medical conditions do not constitute an "extraordinary and compelling" reason for release and that the factors in section 3553(a) independently weigh against release. Dkt. No. 155.

### A.

Defendant has not shown that her medical conditions require compassionate release. She is 30 years old and is not suffering from terminal illness or a serious physical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

---

[2] The Ninth Circuit has held that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, which was promulgated before the FSA gave inmates the ability to file motions for compassionate release on their own behalf, is "not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Thus, § 1B1.13 "may inform a district court's discretion" for compassionate release motions filed by a defendant, but it is not binding. *Id.* The Court considers the policy statement only to this limited extent.

Despite her burden, Defendant did not produce *any* evidence in support of her contention that she suffers from medical conditions that amount to an extraordinary and compelling reason for release. The Government, however, obtained and filed Defendant's medical records. Even considering that evidence, the records fail to demonstrate that Defendant suffers from conditions that justify granting compassionate release. The records indicate that Defendant has complained of an issue with her right breast. In August 2021, Defendant told her medical provider that she noticed her right breast was reduced in size and that she had begun to experience chest pain. Ex. E at 24. Another provider noted that her right breast is "visibly misshapen." *Id.* at 6. However, soon after she reported the problem, she had an ultrasound that "show[ed] implants in place," "[n]o edema in the breast tissue adjacent to the implants," and "no abnormally enlarged lymph nodes." *Id.* at 5. She had another ultrasound in September 2022, and was "reassured that her breast exam . . . was normal with the exception of a sustained skin tear on her [right] nipple. There were no masses, no drainage, no lymphadenopathy, and no skin changes. She was afebrile." Ex. F at 5. Defendant's records also do not support her assertion that she suffers from capsular contracture. Her medical records contain only a February 2022 provisional diagnosis that "rule[s] out" capsular contracture. *Id.* at 93.

Defendant argues that she has been denied necessary treatment for reconstruction or removal of the implant, and she should be released so that she can be treated. Defendant's medical records support her assertion that the prison has not yet found a surgeon willing to see her: the records show that the BOP is "still looking for plastic surgeon consult" because the "plastic surgeons at White Memorial Hospital refused to see" her. *Id.* at 19, 32, 37, 41. But Defendant has not shown that she should be released because she has not yet received a surgical consultation. The BOP appears to have been responsive to Defendant's complaints, and Defendant has provided no evidence that her breast pain presents an emergency requiring immediate release, or that she is not able to receive reasonable care in prison.

As to her concerns about COVID-19, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons" for compassionate release. *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020). Defendant's medical records indicate she suffers from asthma, Ex. F at 2, which potentially places her at a somewhat higher risk for severe COVID-19 symptoms. But both her risk of contracting the virus and her risk of severe consequences if she is infected have been reduced by her partial

vaccination. Defendant has refused a second dose of the vaccine (or any boosters). While Defendant is free to decline vaccination, this choice undermines the claim that her vulnerability to the virus warrants compassionate release. *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840 (D. Ariz. 2021) (collecting cases). Defendant has not shown how any of her medical conditions—including her ruptured implant, previous cancer treatment, asthma, history of seizures, or other ailments unsupported by the record—puts her at increased risk of contracting or suffering from an extreme case of COVID-19.

In short, Defendant has not shown that she has a serious medical condition that rises to the level of an extraordinary and compelling reason for early release.

## B.

Defendant's failure to show any extraordinary and compelling reason for compassionate release is sufficient to deny the requested relief. *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (explaining that "a district court that properly *denies* compassionate release need not evaluate each step"). However, the Court finds that the sentencing factors set forth in Section 3553(a) provide an independent basis to deny the requested relief. *See United States v. Tadios*, 854 F. App'x 804, 805 (9th Cir. 2021) (holding that a district court's denial based on the statutory factors "provide[s] an independent reason for denying a compassionate release motion"). Although Defendant is currently imprisoned for a non-violent offense, her extensive and escalating criminal history—including her persistence in using extraordinary, elaborate, and criminal means to take C.P. from her foster family—demonstrate her danger to the public and the low likelihood she will be deterred from further criminal actions. 18 U.S.C. § 3553(a)(2)(B)–(C). Defendant was also sentenced just several months ago and has served only a third of that sentence, which was imposed "to reflect the seriousness" of her crimes and her intensifying misconduct, among other reasons (which the Court adopts here). 18 U.S.C. § 3553(a)(2)(A). Accordingly, Defendant has not met her burden to show that she should be granted compassionate release under the 3553(a) factors.

\*\*\*

For the foregoing reasons, the Court DENIES Defendant's motion for an indicative ruling that it would grant her compassionate release.

IT IS SO ORDERED.

6

Date: December 27, 2022

_____
Stanley Blumenfeld, Jr.
United States District Judge