KARYN H. BUCUR
Attorney at Law
State Bar No. 158608
24881 Alicia Parkway, #E-193
Laguna Hills, California 92653
Tel: (949) 472-1092
Email:  khbucur@cox.net

Attorney for Defendant
Ms. MAHSA PARVIZ


IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAHSA PARVIZ,<br><br>Defendant. | CASE NO. 2:21-CR-00293-SB<br><br>Ninth Circuit:  CA 22-50160<br><br>DEFENDANT MAHSA PARVIZ' EX PARTE APPLICATION FOR BAIL PENDING APPEAL AND MEMORANDUM IN SUPPORT; DECLARATIONS OF KARYN H. BUCUR, BAHMAN PARVIZ-KHYAVI, SHAMSI DAMAVANDI AND EXHIBIT<br><br>PROPOSED ORDER LODGED SEPARATELY<br><br>*No hearing date requested* |

**EX PARTE APPLICATION FOR AN ORDER FOR BAIL PENDING APPEAL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................iii

EX PARTE APPLICATION FOR BAIL PENDING APPEAL................2

PROCEDURAL BACKGROUND ....................................4

ARGUMENT ................................................5

THE BAIL REFORM ACT OF 1984 AUTHORIZES BAIL
PENDING APPEAL FOR MS. PARVIZ BECAUSE SHE DOES NOT POSE
ANY FLIGHT RISK, THE APPEAL IS NOT FOR THE PURPOSE OF DELAY,
AND THE APPEAL WILL RAISE A SUBSTANTIAL QUESTION THAT
IS LIKELY TO RESULT IN REVERSAL ...........................5

  I. MS. PARVIZ IS NOT A FLIGHT RISK OR
     DANGER TO THE COMMUNITY ...............................6

  II.  MS. PARVIZ' APPEAL IS NOT FOR PURPOSE OF DELAY ......8

  III. MS. PARVIZ RAISES "SUBSTANIAL QUESTIONS" ON APPEAL
       RELATING TO INSUFFICIENCY OF THE EVIDENCE TO SUPPORT
       THE CONVICTION IN COUNT 2, AGGRAVATED IDENTITY THEFT
       IN VIOLATION OF 18 U.S.C. § 1028(a)(1)AND FAILURE OF THE
       COURT TO GRANT THE REQUEST FOR A DOWNWARD DEPARTURE
       PURSUANT TO U.S.S.G. § 5K2.23 FOR CREDIT FOR
       THE 500 DAYS SHE SERVED ON A RELATED OFFENSE
       IN A TEXAS JAIL........................................9

  IV.   IF THIS ISSUE IS SUBSTANTIAL, AND IF THIS ISSUE IS
        DETERMINED IN MS. PARVIZ' FAVOR, WOULD THE FAVORABLE
        DETERMINATION RESULT IN REVERSAL? ..................15

  V.  THE LENGTH OF AN AVERAGE APPEAL IN THE NINTH CIRCUIT
      FAVORS BAIL IN THIS CASE BECAUSE MS. PARVIZ WILL HAVE
      SERVED ALL OR NEARLY ALL OF HIS PRISON SENTENCE
      IF BAIL IS NOT GRANTED ...............................17

  VI. PROPOSED TERMS AND CONDITIONS OF RELEASE ...........18

CONCLUSION ..............................................19

EXHIBIT A DECLARATION OF KARYN H. BUCUR ..................20

EXHIBIT B DECLARATION OF BAHMAN PARVIZ-KHYAVI.............22

DEFENDANT MAHSA PARVIZ' APPLICATION FOR BAIL PENDING
APPEAL

EXHIBIT C DECLARATION OF SHAMSI DAMAVANDI...................24

EXHIBIT D LETTER FROM BADONNA JARVIS, PROGRAM DIRECTOR
OF WATTS UP COMMUNITY DEVELOPMENT CORPORATION..............26

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**

D'Aguino v. United States
 180 F. 2d 271 (9th Cir. 1950) ................................10

Dubin v. United States
143 S. Ct. 1557 (2023)..........................2, 3, 6, 12-14

United States v. Giancola
754 F. 2d 898 (11th Cir. 1985) .............................10

United States v. Handy
761 F. 2d 1279 (9th Cir. 1985) ...............3, 6, 9, 10, 15, 16

United States v. Hickey
2006 U.S. Dist. LEXIS 55116 (N.D. Cal. 2006)...................8

United States v. Naone
2009 U.S. Dist. LEXIS 110658 (D. Hawai'i 2009).................9

United States v. Pollard
778 F. 2d 1177 (6th Cir. 1985) ..........................3, 9, 15

**STATUTES**

18 U.S.C. § 1028A(a)(1)...........................2-5, 9-12, 14

18 U.S.C. § 1542.......................................4, 10

18 U.S.C. § 3143(b)....................1, 2-6, 9, 14, 15, 17-19

**UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. § 5K2.23......................................2, 9, 13

**EX PARTE APPLICATION FOR AN ORDER FOR BAIL PENDING APPEAL**

This Court should permit defendant Mahsa Parviz to be released pending appeal under 18 U.S.C. § 3143.  Ms. Parviz has raised substantial questions on appeal that are fairly debatable.  Ms. Parviz argues on appeal that there was insufficient evidence to support her conviction for aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  After Ms. Parviz filed her opening brief, the Supreme Court decided Dubin v. United States, 143 S. Ct. 1557 (2023) which narrowed the construction of the aggravated identity theft statute.

As will be described further below, under the Supreme Court's recent clarification of what conduct violates 18 U.S.C. § 1028A(a)(1), Ms. Parviz' conviction in count 2 cannot stand and should be reversed.  Ms. Parviz further raises the substantial question that the district court should have given her credit for the 500 days she served in Texas jail on a related offense pursuant to U.S.S.G. § 5K2.23.  Last, Ms. Parviz argues on appeal that supervised release condition 10, which imposes a complete ban of any contact with Ms. Parviz' daughter, including telephone calls and birthday cards, should be excised because it implicates a significant liberty interest requiring the district court to "undertake an individualized review" on the record with evidence to justify the condition.  The district court did not undertake the required individualized review

on the record to justify the imposition of the complete ban of any contact with Ms. Parviz' daughter.

A substantial question "does not require the district court to find it committed reversible error". (Emphasis added.)   United States v. Pollard, 778 F. 2d 1177, 1181-82 (6th Cir. 1985).   A substantial question is one that is "fairly debatable" and that another reasonable jurist may answer differently.   United States v. Handy, 761 F.2d. 1279, 1283 (9th Cir. 1985).   The fact that there is now insufficient evidence to convict Ms. Parviz of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), as interpreted by the Supreme Court in Dubin, raises a substantial question that is fairly debatable.   Reasonable jurists could find that Ms. Parviz' conviction for aggravated identity theft should be vacated and her case remanded for resentencing.

According to the Bureau of Prison's website, Ms. Parviz' release date is December 7, 2025, which is approximately 24 months from now. Should the Ninth Circuit find there was insufficient evidence to support the conviction in count 2, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) based on Dubin, then her sentence would be reduced by 24 months.   A conviction of aggravated identity theft carries a mandatory two-year consecutive term pursuant to Penal Code 1028A §§ (a)(1), (b)(2).   If Ms. Parviz is not released now on bail pending appeal, there is a significant risk that she may serve more time in prison than necessary.   If the Ninth Circuit finds that Ms. Parviz is entitled for credit for the 500 days she served in

a Texas jail on a related matter pursuant to U.S.S.G. § 5K2.23, then her sentence could be further reduced by an additional 500 days.

As set forth below, because Ms. Parviz satisfies the requirements for release set forth in 18 U.S.C. § 3143, the Court should permit her to be released on bail pending appeal.

On December 8, 2023, counsel contacted Kathrynne Seiden, AUSA, (213) 894-0631 and Jenna Long, AUSA, (213) 894-8692 by email, to determine the government's position on this request for bail pending appeal. On December 11, 2023, Ms. Long emailed counsel and informed her that the government opposes this request for bail pending appeal. (Exhibit "A", Declaration of Karyn H. Bucur.)

**PROCEDURAL BACKGROUND**

On June 22, 2021, Ms. Parviz was charged in count 1 with violation of 18 U.S.C. § 1542, false statement on a passport application, and in count 2, she was charged with 18 U.S.C. § 1028A, aggravated identity theft. (Doc. No. 1.) Following a jury trial, she was convicted on both counts. (Doc. No. 69.) Ms. Parviz was sentenced to 61 months imprisonment, 37 months for the passport count, and a consecutive 24 months for the aggravated identity theft. (Doc. No. 121.)

Ms. Parviz is in custody at Federal Detention Center, SeaTac, in Seattle, Washington, serving the sentence imposed in this case. Her projected release date is December 7, 2025. This release date could be earlier due to possible further reductions relating to the First

Step Act and completion of the Residential Drug Abuse Program, "RDAP".

On July 21, 2022, Ms. Parviz filed a Notice of Appeal.  (Doc. No. 127.)  The Ninth Circuit case number is 22-50160.  (Doc. No. 131.)

On March 30, 2023, Ms. Parviz filed an opening brief.  Ms. Parviz challenged her conviction of aggravated identity theft in violation of 18 U.S.C. § 1028A as charged in count 2.

On June 16, 2023, the government filed its answering brief.  Ms. Parviz' appellate attorney withdrew as counsel from the appeal and new counsel was appointed.  On November 16, 2023, Ms. Parviz filed a supplemental opening brief.

## ARGUMENT

**THE BAIL REFORM ACT OF 1984 AUTHORIZES BAIL PENDING APPEAL FOR MS. PARVIZ BECAUSE SHE DOES NOT POSE ANY FLIGHT RISK, THE APPEAL IS NOT FOR THE PURPOSE OF DELAY, AND THE APPEAL WILL RAISE A SUBSTANTIAL QUESTION THAT IS LIKELY TO RESULT IN REVERSAL**

Under the Bail Reform Act of 1984, the district court must release a defendant pending appeal if it makes three findings. First, the court must find that the defendant will not flee or pose a danger to the community if the court grants bail. *See* 18 U.S.C. § 3143(b)(1)(A). Second, the court must find that the appeal is not for the purpose of delay. *Id.* Third, the court must find that

the appeal "raises a substantial question of law or fact likely to result in" a reversal, a new trial, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. *Id.* § 3143(b)(1)(B). Each of these requirements is satisfied here. *See also* <u>United States v. Handy</u>, 761 F. 2d, 1279, 1279 (9th Cir. 1985).

## I.    Ms. Parviz is Not a Flight Risk or Danger to the Community.

Ms. Parviz poses no risk of flight.  At the time of this writing, Ms. Parviz has served all but 24 months of her 61-month custodial sentence. Her projected release date is December 7, 2025, which is approximately 24 months from now.  Due to the recent Supreme Court decision in <u>Dubin v. United States</u>, 143 S. Ct. 1557 (2023), Ms. Parviz has presented a debatable argument that her conviction in count 2 for aggravated identity theft should be vacated and her sentence will be reduced by 24 months.  Having this knowledge that her sentence could be reduced by at least 24 months after this appeal has been decided is a strong incentive that she would comply with the terms and conditions of her release and not pose a flight risk. Furthermore, Ms. Parviz no longer has a passport; her expired passport was recovered by law enforcement in August 2019.

In addition, Ms. Parviz' parents, Bahman Parviz-Khyavi and Shamsi Damavendi are willing to post their home to secure their daughter's bond.  The property is located at 15025 Farmcote Drive, Frisco, Texas, 75035. The current loan balance is $118,584.11 and the

estimated home value to $678,500.  According to Zillow, the estimated

market value of the property is $722,500.  (Exhibit "B", Declaration

of Bahman Parviz-Khyavi (father) and Exhibit "C", Declaration of

Shamsi Damavandi (mother).)  The posting of the family home will

further reduce any flight risk.

Furthermore, Ms. Parviz has housing secured in the Los Angeles

area should she be released.  Ms. BaDonna Jarvis, the program

director of the Cornerstone Sober Living Facility located in Los

Angeles has accepted Ms. Parviz into the Cornerstone House program.

In a letter dated June 20, 2022, filed into the district court as

document 123, Ms. Jarvis wrote:

> "This program is not for everyone because we have very high
> standards of excellence.  Everyone is held accountable for
> their behavior and attaining their future goals.  The
> Cornerstone House program is highly respected within the
> state parole, state probation, federal probation and
> federal court criminal justice system having worked with
> and is still working with residents who are under their
> respective supervisions."

> "The four pillars of our program are education, community
> service, and love.  We do not tolerate loafers in our
> program we only accept individuals who have demonstrated
> drive and commitment to change."  (Letter from Ms. BaDonna
> Jarvis dated June 30, 2022, attached as Exhibit D.)

On November 28, 2022, counsel called Ms. Jarvis and on

November 29, 2022, counsel sent an email to Ms. Jarvis to

inquire if Ms. Parviz would be accepted at this time into the

Cornerstone House program should she be released on bail pending

appeal. Ms. Jarvis returned counsel's call and left a voicemail

informing counsel that Mr. Parviz would be accepted into their housing program at this time.  (Exhibit "A", Declaration of Karyn H. Bucur.)

Ms. Jarvis also emailed counsel and wrote that "Ms. Parviz's admission into our program still stands whatever her circumstances may be predicated upon her remaining in compliance with all of her court orders, to maintain her eligibility." (Exhibit "A", Declaration of Karyn H. Bucur.)

Should this Court grant bail pending appeal, Ms. Parviz will be living in a facility, Cornerstone House, which requires accountability for each resident's behavior and must remain in compliance with all court orders.  Living in this environment will ensure that Ms. Parviz is not a flight risk or a danger to the community.

## II.    Ms. Parviz' Appeal Is Not for the Purpose of Delay.

Ms. Parviz' appeal is not for purposes of delay. She has every intent of proceeding promptly with his appeal. In fact, she has already filed an opening brief and a supplemental opening brief. Other courts finding that a defendant was motivated primarily by a purpose to delay have pointed to stall tactics utilized by that defendant. *See, e.g.*, United States v. Hickey, 2006 U.S. Dist. LEXIS 55116, at *12 (N.D. Cal. 2006) ("Delay was repeatedly precipitated by

defendant and Attorney Cohen during the course of this criminal

action…[and] [f]urther delay appears to be the primary purpose of

defendant's latest motion."); United States v. Naone, 2009

U.S. Dist. LEXIS 110658, at *17 (D. Hawai'i 2009) ("Defendant has

failed to introduce any evidence to show that his instant Motion is

anything other than another attempt at delay in a history of delay

tactics by Defendant and his counsel").

No such delay tactics have been previously employed by Ms.

Parviz in the instant action.  In fact, should this Court deny this

application, Ms. Parviz plans to file a motion to expedite her appeal

pursuant to Ninth Rule 27-12 due to the length of remainder of Ms.

Parviz' sentence.  Even with an expedited appeal, Ms. Parviz is

expected to serve her entire sentence term or most of it before there

is any decision from the Ninth Circuit.

**III.  Ms. Parviz Raises "Substantial Questions" on Appeal Relating to
Insufficiency of Evidence to support the conviction in count 2,
aggravated identity theft in violation of 18 U.S.C. § 1028 (a)(1) and
failure of the court to grant the request for a downward departure
pursuant to U.S.S.G. §5K2.23 for credit for the 500 days she served
on a related offense in a Texas jail**

When considering a motion for bail pending appeal, the Court

must focus on whether the appeal will present "a substantial question

of law or fact." 18 U.S.C. § 3143(b)(1)(B). The "substantial

question" standard "does *not* require the district court to find that

it committed reversible error." (Emphasis added.)  United States v.

Pollard, 778 F.2d 1177, 1181-82 (6th Cir. 1985); United States v.

Handy, 761 F.2d 1279, 1281 (9th Cir. 1985) (same).

DEFENDANT MAHSA PARVIZ' APPLICATION
FOR BAIL PENDING APPEAL

Rather, a "substantial question" is one that is "fairly

debatable" or "fairly doubtful." United States v. Handy, 761 F.2d at

1283 (quotations omitted). Put another way, "a 'substantial question'

is one of more substance than would be necessary to a finding that it

was not frivolous." *Id.* (quotation omitted).  In other words, a

substantial question is one that is fairly debatable and is one of

more substance than would be necessary to a finding that it was not

frivolous.  D'Aguino v. United States, 180 F. 2d 271, 272 (9th Cir.

1950), United States v. Giancola, 754 F. 2d 898, 901 (11th Cir. 1985).

Ms. Parviz has presented three issues on appeal.  First, Ms.

Parviz argues that there is insufficient evidence to support the

conviction in count 2, aggravated identity theft in violation of 18

U.S.C. § 1028A(a)(1).  Count 2 charged Ms. Parviz as follows:

"On or about June 11, 2019, in Los Angeles County, within the
Central District of California, defendant MAHSA PARVIZ knowingly
used, without lawful authority, a means of identification that
defendant PARVIZ knew belonged to another person, namely, the name of
victim B.B.,[Bret Barker] during and in relation to the offense of
False Statement in a Passport Application, a felony violation of
Title 18, United States Code, Section 1542 as charged in Count One of
the Indictment." (Doc. No. 1.)

In this case, Ms. Parviz' legal rights as C.P.'s mother were

terminated by court order on December 18, 2018. (2-ER-51.)[1]  While the

custody case was on appeal, Ms. Parviz applied for an emergency

passport for "C.P.".  In support of the application, which was

---

[1] ER refers to the Excerpts of Record filed in the Ninth Circuit
in case number 22-50160 on March 30, 2023 and can be located at
Docket Entry No. 20.

submitted on June 11, 2019, Ms. Parviz attached a letter purportedly signed by a Bret Barker, identified as a doctor at Palo Alto hospital.  In fact, Mr. Barker was a nurse practitioner.  (2-ER-171.) Mr. Barker testified at trial he met Ms. Parviz in May 2019. (2-ER-170.)  Mr. Barker's letter claimed that C.P. was in the care of Mr. Barker, immunocompromised, and in need of emergency medical treatment in the United Kingdom.  (3-ER-414.)  These facts explained the need for the emergency passport as well as the reason C.P. could not appear in person at the passport office without posing a serious risk to her health.  (2-ER-162-165.)  At trial, the government presented evidence that appellant knew the representations about C.P.'s health were false and that C.P. was, at the time of the application was submitted, healthy and in the care and custody of her foster parents. (2-ER-225-227.)  The clerk processed the passport application and Ms. Parviz picked up a passport card for C.P. on June 12, 2019.  (2-ER-284.)

Ms. Parviz was found guilty of aggravated identity theft as charged in count 2.  (Doc. No. 69.) As a result, Ms. Parviz received a mandatory two-year term added to her sentence for this offense. (Doc. No. 121.)

Ms. Parviz challenges her conviction for aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) because the evidence at trial did not support the conviction.  Among other arguments, Ms. Parviz argued that evidence showed that she did not "use" Mr.

Barker's identity in violation of 18 U.S.C. § 1028A(a)(1) under the

Ninth Circuit's current construction of the statute.  Alternatively,

Ms. Parviz argued that the Ninth Circuit's construction of the term

"used" in 18 U.S.C. § 1028A(a)(1) is incorrect, and under the proper,

narrower construction, Ms. Parviz did not "use" Mr. Barker's identity

because the use was done with his knowledge and complicity.

After Ms. Parviz filed her opening brief, the Supreme Court in

Dubin v. United States, 143 S. Ct. 1557 (2023), narrowed the

construction and interpretation of the aggravated identity theft

statute, 18 U.S.C. § 1028A(a)(1) in the manner Ms. Parviz suggested

in her opening brief was the correct interpretation of the term

"used" in 18 U.S.C. § 1028A(a)(1).

The Dubin Court found:

> "Taken together, from text to context, from content
> to common sense, §1028A(a)(1) is not amenable to
> the Government's attempt to push the statutory
> envelope.  A defendant "uses" another person's
> means of identification 'in relation to' a
> predicate offense when this use is at the crux of
> what makes the conduct criminal.  To be clear,
> being at the crux of the criminality requires more
> than a causal relationship, such as 'facilitation'
> of the offense or being a but-for cause of its
> 'success'. [citation omitted].  Instead, with fraud
> or deceit crimes like the one in this case, the
> means of identification specifically must be used
> in a manner that is fraudulent or deceptive.  Such
> fraud or deceit going to identity can often be
> succinctly summarized as going to 'who' is
> involved."  Dubin v. United States, supra, 143 S.
> Ct. at 1573.

Under this narrowed interpretation of the aggravated theft

statute, Ms. Parviz' conduct as charged in count 2 cannot violate the

aggravated identity theft statute because crux of the fraud was the

false statements relating to C.P.'s health, and Mr. Barker's identity

was not the crux of the criminality.  The name and the identity of

the "doctor" or Mr. Barker was ancillary to what made the conduct

fraudulent. See Dubin v. United States, supra, 143 S. Ct. 1567.

Furthermore, there was no "theft" of Mr. Barker's identity also

because the evidence showed Mr. Barker was complicit in the

preparation of the letter.  For the statute to be violated, there

must be a "theft" of someone's identity.   Dubin v. United States,

supra, 143 S. Ct. at 1567.

Ms. Parviz also argues on appeal that her sentence is

substantially unreasonable because she should have received a

downward departure of 500 days pursuant to U.S.S.G. § 5K2.23 for

credit for time served on a discharged Texas state sentence on a

related offense because the Texas offense was relevant conduct and

the government significantly delayed prosecution in this case and

arrested Ms. Parviz after she finished serving her Texas sentence.

Last, Ms. Parviz argues on appeal that supervised release

condition 10, which imposes a complete ban of any contact with Ms.

Parviz' daughter, including telephone calls and birthday cards,

should be excised because it implicates a significant liberty

interest requiring the district court to "undertake an individualized

review" on the record with evidence to justify the condition.  The

district court did not undertake the required individualized review

on the record to justify the imposition of the complete ban of any
contact with Ms. Parviz' daughter.

These issues present a "substantial question" under §
3143(b)(1)(B). These issues are, at a minimum, "fairly debatable" and
certainly not "frivolous."   The Supreme Court's decision in Dubin v.
United States, 143 S. Ct. 1557 (2023) narrowing the interpretation of
the aggravated identity theft statute makes Ms. Parviz' argument that
the evidence presented at trial was insufficient to support the
conviction in count 2, aggravated identity theft in violation of 18
U.S.C. § 1028A(a)(1) "fairly debatable" and certainly not
"frivolous".

Should Ms. Parviz prevail on appeal with this issue and count 2
is reversed, then Ms. Parviz' sentence would be reduced by 24 months.
At the time of this writing, Ms. Parviz has approximately 24 months
remaining on her sentence.  Her sentence could be further reduced by
the Bureau of Prisons for credit she receives from the First Step Act
and the one-year reduction for completion of  the Residential Drug
Abuse Program, "RDAP".   This means that Ms. Parviz will be spending
more time in prison than is warranted.  Also, if Ms. Parviz prevails
on the issue relating to her time served in a Texas prison, her
sentence should be reduced by an additional 500 days.   This motion
for bail pending appeal should be granted to avoid Ms. Parviz
spending excess time in prison.

When considering a motion for bail pending appeal, the district court must focus on whether the appeal will present a "substantial question of law or fact".  18 U.S.C. § 3143 (b)(1)(B).  The "substantial question" standard "does not require the district court find it committed reversible error".  United States v. Pollard, supra, 778 F. 2d at 1181-1182.  Rather, a "substantial question" is one that is "fairly debatable".  United States v. Handy, supra, 761 F. 2d at 1283.  Ms. Parviz has demonstrated that the questions she is raising on appeal are "substantial" and are "fairly debatable".

**IV.   If These Issues are Substantial, and if these Issues are Determined in Ms. Parviz' favor, would the Favorable Determination Result In Reversal?**

The term "likely to result in a reversal" means: "that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed".  United States v. Handy, supra, 761 F. 2d at 1283.  What this means is the court having found the question substantial, must *presume* it is determined favorably to the appellant.  The question then is, assuming that presumption, would the ruling require a reversal, a new trial, a sentence without a prison or sentence less than the time served during the duration of the appeal.

In other words, "likely to result in a reversal" does not mean Ms. Parviz has to prove at this moment she will prevail on this issue, rather it means if she prevails on the issue raised in her opening brief or

supplemental opening brief, a reversal will be likely. "The phrase "likely to result in reversal" defines the type of question to be presented. Handy, supra at 1281. In this case, if Ms. Parviz prevails on her issue regarding insufficiency of the evidence as to count 2, Ms. Parviz' case will be remanded and count 2 will be vacated. She will be entitled to a resentencing hearing which will result in a lower sentence of at least 24 months. If this happens, Ms. Parviz will have most likely finished the remainder of her prison term by the time the appeal is over and she is resentenced.

Ms. Parviz has demonstrated she met the burden that she raised a substantial question likely to result in reversal. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." Handy, supra at 1283. Ms. Parviz is also not required to prove at this time that her issues will result in reversal. "Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial." Handy, supra at 1281. The defendant needs only to identify the issue, state the basis of her argument, and show that the argument is debatable. "The question may be "substantial" even though the judge or justice hearing the application for bail would affirm on the merits of the appeal." Handy, supra at 1281. Ms. Parviz has identified her appellate issues, stated the basis of her arguments and

has shown the issues are debatable.  This application for bail pending appeal should be granted.

**V.  The Length of an Average Appeal in The Ninth Circuit Favors Bail
In This Case Because Ms. Parviz Will Have Served All or Nearly All
of Her Prison Sentence If Bail Is Not Granted**

If Ms. Parviz is not granted bail pending appeal, she may have completed her prison sentence by the time the appeal is over.  If a substantial question is raised and if the result could be "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process"—the motion should be granted. 18 U.S.C. § 3143(b)(1)(B)(iv).

In the Ninth Circuit, a civil case typically takes 6-12 months to proceed from the notice of appeal to oral argument. (*See* Ninth Circuit, *Frequently Asked Questions*, *available at* http://www.ca9.uscourts.gov/general/faq.)  For a criminal appeal, the Ninth Circuit website states that for a criminal appeal oral argument is scheduled approximately 3-4 months after briefing is complete. Even once the case is argued, the Ninth Circuit has no time limit, but most cases are decided within 3 months to a year after submission. And, finally, the Ninth Circuit has no time limit to make a decision on a petition for rehearing and it may take a few months or longer. (*See id FAQs.*)  As a result, Ms. Parviz' appeal can be expected to take much longer than the remainder of her sentence.  The

motion should be granted because Ms. Parviz has satisfied each of the factors identified in 18 U.S.C. § 3143(b).

## VI.   PROPOSED TERMS AND CONDITIONS OF RELEASE

Should this Court grant bail pending appeal, this Court will set the conditions and terms of release as it deems appropriate.  A suggestion for conditions and terms of release are as follows:

An appearance bond in an amount decided by the Court with Affidavit of Surety Without Justification (Form CR-4) signed by Ms. Parviz' parents Bahman Parviz-Khyavi and Shamsi Damavandi or an Affidavit of Surety with Justification with full deeding of property in an amount decided by this Court.

Ms. Parviz shall submit to Pre-Trial Services Agency (PSR) supervision as directed by PSA.  Ms. Parviz shall surrender all passports and travel documents to PSA or sign a Declaration re Passport or Other Travel Documents (Form CR-37) and do not apply for a passport or other travel documents during the pendency of this case.  Travel is restricted to the Central District of California unless prior permission is granted by PSA to a specific location. Court permission is required for international travel.  Ms. Parviz is to reside at the Cornerstone House program in Los Angeles.  Ms. Parviz is to maintain or actively seek employment and provide proof to PSA and employment is to be approved by PSA.  And, any other condition the Court deems appropriate.

1

2

3                              **CONCLUSION**

4        For the foregoing reasons, the Court should release Ms. Parviz

5   pending appeal under 18 U.S.C. § 3143(b).

6

7   Dated:  December 11, 2023

8                                          Respectfully submitted,

9
                                           By: /s/ Karyn H. Bucur
10                                         Attorney for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KARYN H. BUCUR

I, Karyn H. Bucur, declare as follows:

1.   I am an attorney at law duly licensed to practice law before all the courts of the State of California and in this Court.

2.   I was appointed to represent Ms. Parviz on appeal in case number 22-50160.

3.   On December 8, 2023, I contacted Kathrynne Seiden, AUSA, (213) 894-0631 and Jenna Long, AUSA, (213) 894-8692, by email to determine the government's position on this request for bail pending appeal. On December 11, 2023, Ms. Long emailed me and informed me that the government opposes this request for bail pending appeal.

4.   On November 28, 2023, I called and left a voice-mail message with BaDonna Jarvis, program director of the Cornerstone Sober Living Facility, in Los Angeles to inquire whether Ms. Parviz would be accepted at this time into the Cornerstone House program should she be released on bail pending appeal.  Ms. Jarvis returned my call and left a voicemail informing me that Ms. Parviz would be accepted into their housing program at this time.

EXHIBIT "A"     20

5.    On December 2, 2023, Ms. Jarvis also emailed me and wrote that "Ms. Parviz's admission into our program still stands whatever her circumstances may be predicated upon her remaining in compliance with all of her court orders, to maintain her eligibility."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  December 11, 2023

__/s/Karyn H. Bucur_____
Karyn H. Bucur

EXHIBIT "A"        21

## DECLARATION OF BAHMAN PARVIZ-KHYAVI

I, Bahman Parviz-Khyavi, declare as follows:

1.     I am the father of Mahsa Parviz, the defendant/appellant in United States v. Parviz, 21-CR-00293-SB, CA 22-50160.

2.     I make this declaration of my own personal knowledge, except where stated on information and belief, and if called to testify in Court on these matters, I could do so competently.

3.     My wife Shamsi Damavandi and I own a home located at 15025 Farmcote Drive, Frisco, Texas, 75035.

4.     I am informed that my daughter's attorney, Karyn H. Bucur, will be filing an application for bail pending appeal.  I am willing and able to post our property located at 15025 Farmcote Drive, Frisco, Texas, 75035 as security for her release.

5.     The current loan balance for the property located at 15025 Farmcote Drive, Frisco, Texas, 75035 is $118,584.11.  The estimated home value is $678,500.  According to Zillow, the estimated market value of the property is $722,500.

EXHIBIT "B"        22

6.     There are no liens on the property located at 15025 Farmcote

Drive, Frisco, Texas, 75035

I declare under penalty of perjury under the laws of the State of

California that the foregoing is true and correct.

Executed this __4__ day of December 2023, at _Frisco_, Texas.

Bahman Parviz-Khyavi

23

EXHIBIT "B"

## DECLARATION OF SHAMSI DAMAVANDI

I, Shamsi Damavandi, declare as follows:

1.      I am the mother of Mahsa Parviz, the defendant/appellant in United States v. Parviz, 21-CR-00293-SB, CA 22-50160.

2.      I make this declaration of my own personal knowledge, except where stated on information and belief, and if called to testify in Court on these matters, I could do so competently.

3.      My husband Bahman Parviz-Khyavi and I own a home located at 15025 Farmcote Drive, Frisco, Texas, 75035.

4.      I am informed that my daughter's attorney, Karyn H. Bucur, will be filing an application for bail pending appeal. I am willing and able to post our property located at 15025 Farmcote Drive, Frisco, Texas, 75035 as security for her release.

5.      The current loan balance for the property located at 15025 Farmcote Drive, Frisco, Texas, 75035 is $118,584.11. The estimated home value is $678,500. According to Zillow, the estimated market

EXHIBIT C          24

value of the property is $722,500.

6.     There are no liens on the property located at 15025 Farmcote
Drive, Frisco, Texas, 75035

I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.


Executed this __4th__ day of December 2023, at FRISCO, Texas.


Shamsi Damavandi

EXHIBIT C          25



# Watts Up Community Development

# Corporation

9702 Holmes Avenue | Los Angeles, California
90002 Phone: (323) 566-1202 | Fax: (323) 749-5556
Reverend Marcus A. Murchinson



FILED
CLERK, U.S. DISTRICT COURT

JUL 12 2022

CENTRAL DISTRICT OF CALIFORNIA
BY ____ jcr ____ DEPUTY

2:21-cr-00293-SB-1
UNDER SEAL

June 30, 2022

To whom it may concern,

My name is BaDonna Jarvis, I am the program director of the Cornerstone Sober Living Facility located in Los Angeles. I am writing on behalf of Mahsa Parviz. Miss Parviz's mother contacted the Cornerstone House on May 22, 2022 in an attempt to divert Miss Parviz into the Cornerstone House program in lieu of prison. The Cornerstone House is very selective about the residents we accept and one of the steps in the admission process is an initial questionnaire designed to assess the level of motivation the potential resident has to change. After being contacted by Miss Parviz's mother I mailed an initial questionnaire to Miss Parviz to which she promptly responded. After reviewing her answers, the Cornerstone House decided that we would take Miss Parviz into our program. In addition to assessing the motivation of a potential resident the questionnaire is designed to probe into the why of a potential resident. This program is not for everyone because we have very high standards of excellence. Everyone is held accountable for their behavior and attaining their future goals. The Cornerstone House program is highly respected within the state parole, state probation, federal probation and federal court criminal justice system having worked with and is still working with residents who are under their respective supervisions. The reason we are so highly respected is because our sober living model is similar to an inpatient alcohol and drug treatment program, and it is based on community. We believe that if we foster a sense of community then we will foster a sense of responsibility and accountability in our residents. One of the methods of doing this is by virtue of every resident being required to participate in civic engagement activities on a regular basis. We hold annual Thanksgiving food drives, Christmas toy drives, Mother's Day candy drives, we engage in graffiti removal and feeding the homeless, just to name a few. Residents are required to attend two NA/ AA meetings per week, turn in a weekly schedule so that we may assess how wisely they are using their time, complete daily writing assignment, and be enrolled in and attending a minimum of 4 hours per week of outpatient drug and alcohol treatment, and finally every resident is required to commit to attain a weekly S.M.A.R.T goal. We also offer wrap around services that help residents get employed, get their GED's or post-secondary education, driver's licenses, family reunification and permanent housing. The four pillars of our program are education, community, service, and love. We do not tolerate loafers in our program we only accept individuals who have demonstrated drive and commitment to change. Based on her answers to our questionnaire we believe that Miss Mahsa Parviz is such a person.

I am saying all of this to convince you that Miss Mahsa Parviz would benefit from our program tremendously and in the end become a law-abiding, contributing member of society. I am humbly asking you to consider

EXHIBIT D          26

remanding her to our program rather than to custody with whatever stipulations that you deem necessary for her rehabilitation, and we will certainly see that they are strictly enforced.

If you have any further questions or concerns, please do not hesitate to contact me.

Respectfully,


BaDonna Jarvis
Program Director
Watts Up Community Development Corporation
(323) 996-5005 (office)
(323) 331-7920 (cell)
badonna.wattsupcdc@gmail.com

EXHIBIT D                    27

CERTIFICATE OF SERVICE

Case Name:  **U.S. v. Parviz**    Case No.: 21-293 SB


     I hereby certify that on December 11, 2023,  I electronically
filed the foregoing documents with the Clerk of the Court by using
the appellate CM/ECF system:

DEFENDANT MAHSA PARVIZ EX PARTE APPLICATION FOR BAIL PENDING APPEAL
AND MEMORANDUM IN SUPPORT

     All of the participants in this case are registered CM/ECF
users.  They will be served by the appellate CM/ECF system.


     I declare under penalty of perjury under the laws of the State
of California the foregoing is true and correct and that this
declaration was executed on December 11, 2023, at Laguna Hills,
California.


December 11, 2023

S/Karyn H. Bucur