**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50160 |
| *Plaintiff-Appellee*, | D.C. No. 2:21-cr-00293-SB-1 |
| v. | |
| MAHSA PARVIZ, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted May 17, 2024
Pasadena, California

Filed March 19, 2025

Before: Daniel P. Collins, Holly A. Thomas, and Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Collins

### SUMMARY[*]

### Criminal Law

The panel affirmed Mahsa Parviz's conviction and sentence for one count of making a false statement on a passport application, 18 U.S.C. § 1542, and one count of aggravated identity theft, 18 U.S.C. § 1028A(a)(1), arising from Parviz's scheme to kidnap C.P., her biological daughter over whom she had lost her parental rights, and then to take C.P. out of the United States.

On an application to obtain a passport for C.P., Parviz submitted various false statements in order to get around specific requirements. One such requirement is that any applicant—including a minor—appear in person. State Department policy allows for an exception where the minor is medically unable to be present. To fit within this exception, Parviz submitted a fraudulent letter from Bret Allen Parker, a nurse practitioner who had neither met nor treated C.P., stating that C.P. was under his care and was "unable to leave the medical facility due to her critical medical condition."

Parviz argued that, under *Dubin v. United States*, 599 U.S. 110 (2023), which was decided while her appeal was pending, the Government presented insufficient evidence that she "used" Parker's identity to commit passport fraud. The panel held that the evidence in this case is sufficient to meet the standard set forth in *Dubin*. A rational jury could find that Parviz fraudulently misused Barker's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

identity in the letter, which was crucial to securing a passport for C.P., and the evidence was therefore sufficient to support a finding that Parviz's use of Barker's means of identification was at "the crux of [her] underlying criminality."

Parviz separately contended that the phrase "without lawful authority" in § 1028A must mean more than "used illegally," because the premise of the statute is that a predicate offense has been committed. In Parviz's view, because she used Barker's means of identification "with his complicity," she did not use such means "without lawful authority." The panel wrote that it remains bound by *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015), which rejected this construction of the statute.

The panel held that the district court did not abuse its discretion in rejecting Parviz's argument that her sentence should be reduced by giving her credit for time served in Texas in connection with her conviction there for the attempted kidnapping of C.P.

The panel found no abuse of discretion in the district court's imposition of a special condition of supervised release prohibiting Parviz from having any contact with C.P.

---

**COUNSEL**

Kathrynne N. Seiden (argued) and Jenna W. Long, Assistant United States Attorneys, Terrorism and Export Crimes Section; David R. Friedman, Assistant United States Attorney; Bram M. Alden, Assistant United States Attorney, Chief, Criminal Appeals Section; Annamartine Salick and Cameron L. Schroeder, Assistant United States Attorneys,

Chiefs, National Security Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Karyn H. Bucur (argued), Attorney at Law, Laguna Hills, California; Gail Ivens, Attorney at Law, Monterey, California; for Defendant-Appellant.

## OPINION

COLLINS, Circuit Judge:

Defendant Mahsa Parviz appeals her conviction and sentence for one count of making a false statement on a passport application, 18 U.S.C. § 1542, and one count of aggravated identity theft, 18 U.S.C. § 1028A(a)(1). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

### I

Parviz's convictions arose from her scheme to kidnap C.P., her biological daughter over whom she had lost her parental rights, and then to take C.P. out of the United States.

Parviz gave birth to C.P. in November 2017. Three months later, C.P. was admitted into foster care, and on December 18, 2018, a Texas state court terminated Parviz's legal rights as C.P.'s parent. In addition to terminating Parviz's parental rights, the Texas court also permanently enjoined Parviz from coming within 500 feet of C.P. or having any contact with her. Parviz appealed the order terminating her parental rights, but the Texas Court of

Appeals affirmed on July 1, 2019. However, while her appeal was still pending, Parviz devised a scheme to obtain a passport for C.P., kidnap her from her foster family, and take C.P. with her out of the United States.[1]

To obtain a passport and passport card for C.P., Parviz submitted an application in C.P.'s name to the Los Angeles Passport Agency on June 11, 2019. On this application, Parviz made various false statements in order to get around three specific requirements of the passport application process.

First, when a minor submits a passport application, a parent or legal guardian must sign the application on his or her behalf. To satisfy this requirement, Parviz falsely represented herself as C.P.'s parent or legal guardian, despite knowing that she had lost her parental rights.

Second, except for minors who have only one legal parent, both parents must be present to apply for a minor's passport. To address this requirement, Parviz submitted a copy of C.P.'s birth certificate, which listed her as C.P.'s sole legal parent. In doing so, Parviz again falsely represented that she had parental rights that she knew she no longer had.

Third, the passport application's instructions specified that for any passport application, the applicant—including a minor—is required to appear in person. However, State Department policy allows for an exception to this

---

[1] This was not Parviz's first attempt to regain physical custody of C.P. In February 2019, Parviz forged a Texas court order, styled as a "Writ of Attachment," which instructed law enforcement to return C.P. to her custody. Based on that conduct, Parviz later pleaded guilty in 2021 in Texas state court to tampering with a government record in violation of Texas law.

requirement where the minor is medically unable to be present. *See* 22 C.F.R. § 51.28(a)(1) (authorizing exceptions to the in-person requirement, "pursuant to guidance issued by the Department"). To fit within this medical exception, Parviz submitted a fraudulent letter on the letterhead of the Lucile Packard Children's Hospital ("Packard Hospital") in Palo Alto, California. The letter, dated June 7, 2019, purported to be from "Dr. Bret Allen Barker, DNP, FNP," and it stated that C.P. was under his care, was immunocompromised, and was "unable to leave the medical facility due to her critical medical condition." The letter claimed that C.P. required "emergency travel to the U.K. for medically necessary operations and a personal appearance for the passport application process would pose an unsurmountable risk to the child's health." The letter also included Barker's name, National Provider Index number ("NPI"), registered nursing number, and signature. Contrary to the representations in this letter, C.P. was in the care of her foster family in Texas, as her foster mother testified at trial; she had no ongoing health issues; she was not immunocompromised; and she had no scheduled medical operations. Barker was a nurse practitioner who had worked at Packard Hospital from March 2019 to April 2019, and he became romantically involved with Parviz in May 2019. But Barker had never met C.P., nor treated her as a patient, and he was not working at Packard Hospital on the date listed in the letter.

The Government also submitted evidence at trial supporting an inference that Parviz, not Barker, had prepared the letter, albeit with some "minimal[]" assistance from Barker. Barker testified that Parviz had asked him to write such a letter but that he neither prepared it nor signed it. A comparison with Barker's signature in his DMV records

indicated a mismatch between his signature and the signature on the letter. Additionally, Barker's middle name—Alan— was misspelled on the letter as "Allen." Law enforcement also found an unsigned copy of the letter in Parviz's car, along with Parviz's U.S. passport, the fraudulently obtained passport for C.P., and Parviz's expired Iranian passport.

The clerk at the passport office processed Parviz's application for C.P., and Parviz picked up C.P.'s passport and passport card on June 12, 2019. Parviz then headed to Texas. On August 1, 2019, Parviz sent a text to C.P.'s foster mother informing her that officials needed to complete an "early childhood intervention" evaluation for C.P. C.P.'s foster mother, who had fostered multiple children and was familiar with the relevant processes, was suspicious of the text and contacted child services officials and law enforcement. Law enforcement officials instructed her to go forward with arranging an appointment with the person sending the text messages, and officers arrested Parviz at the scheduled appointment. Parviz pleaded guilty to attempted kidnapping in violation of Texas law, was sentenced to 500 days incarceration, and was released in January 2021.

Soon after her release, Parviz contacted constables in Collin County, Texas, seeking to recover the passports that had been found in a search of her car after her arrest, including the passport for C.P. Noticing that the passport and passport card for C.P. had been issued after Parviz's parental rights had been terminated, the county constables contacted federal passport authorities. That led federal officials to take a closer look at C.P.'s passport application, which led to Parviz's indictment for passport fraud and aggravated identity theft.

After a jury trial, Parviz was convicted on both counts. She moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure and, alternatively, for a new trial.  Parviz argued, *inter alia*, that "her submission of a forged letter in Bret Barker's name in support of her passport application for C.P. was not 'use' of Barker's identity within the meaning of 18 U.S.C. § 1028A(a)(1)." The district court denied the motion, citing our holding that "the statutory text does not suggest that 'use' 'refers only to assuming an identity or passing oneself off as a particular person.'" *United States v. Harris*, 983 F.3d 1125, 1128 (9th Cir. 2020) (citation omitted).  The court subsequently sentenced Parviz to 37 months on the passport fraud count, and 24 months to be served consecutively on the aggravated identity theft count, as required by § 1028A.  The district court also imposed a three-year term of supervised release.

## II

Parviz appeals the district court's denial of her Rule 29 motion, arguing that, under *Dubin v. United States*, 599 U.S. 110 (2023), which was decided while her appeal was pending, the Government presented insufficient evidence that she "used" Barker's identity to commit passport fraud. *See* 18 U.S.C. § 1028A.  "The denial of a Rule 29 motion for judgment of acquittal is reviewed de novo." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015).  The standard for sufficiency is well settled: "after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (simplified).

The aggravated identity theft statute provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). In *Dubin*, the Supreme Court resolved a circuit split over the breadth of the statute's requirement that the means of identification be "use[d]" "in relation to" a predicate offense. 599 U.S. at 116. *Dubin* held that the requisite "relation to" the predicate offense is present when "the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal." *Id*. at 114. In adopting this standard, *Dubin* "cited with approval our court's precedent as well as other circuit decisions that provided 'more restrained readings of the aggravated identity theft statute'" with respect to "use." *United States v. Ovsepian*, 113 F.4th 1193, 1205 (9th Cir. 2024) (quoting *Dubin*, 599 U.S. at 116, which in turn cited *United States v. Hong*, 938 F.3d 1040, 1051 (9th Cir. 2019)).

Here, the underlying predicate offense is passport fraud, which the relevant statute defines as:

> [W]illfully and knowingly mak[ing] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United

> States, either for [one's] own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws.

18 U.S.C. § 1542. Accordingly, under *Dubin*, the evidence must be sufficient to show that Parviz's misuse of Barker's "means of identification" was "at the crux" of what made her passport fraud criminal, *viz*., the false statements made to secure C.P.'s passport. 599 U.S. at 114. Moreover, where (as here) the predicate crime involves "fraud or deceit," *Dubin* states that "the means of identification specifically must be used in a manner that is fraudulent or deceptive," meaning that the "fraud or deceit" must go "to 'who' is involved." *Id*. at 132. The evidence in this case is sufficient to satisfy that standard.

As explained earlier, in order to obtain C.P.'s passport without presenting C.P. in person, Parviz presented a fraudulent letter falsely stating that C.P. was immunocompromised, that she required "emergency travel to the U.K. for medically necessary operations," and that personally appearing for the passport application "would pose an unsurmountable risk" to C.P.'s health. Federal regulations require that a minor like C.P. must appear in person to apply for a passport unless the minor's personal appearance is excused by the passport officer pursuant to State Department guidance. *See* 22 C.F.R. § 51.28(a)(1). Jason Roach, the supervising passport examiner who reviewed Parviz's application, testified that, after reviewing the relevant section of the State Department's Foreign Affairs Manual, he determined that "a medical issue could be enough to waive the personal appearance" requirement and that the letter from Barker sufficiently substantiated

C.P.'s medical need. Roach also testified that he verified the letter by confirming through an internet search that Lucile Packard Children's Hospital was "indeed a medical facility" and that Barker held himself out to be a medical provider. Therefore, as Roach testified, he approved the application "[b]ecause Mahsa Parviz presented a letter from a physician stating that the child was medically unable to be present." But the letter's statements seeking to excuse C.P.'s personal appearance were false because, as C.P.'s foster mother testified, C.P. had no chronic medical issues, nor any planned medical operations. Also, Barker had never met or treated C.P.

And, crucially, the record evidence supports a rational inference that Parviz assembled the letter and forged Barker's signature. Barker specifically testified that he did not prepare the letter or sign it. The Government presented Barker's signature from his DMV records, which enabled the jury to contrast it with the signature on the fraudulent letter. In addition, Collin County officers found an unsigned copy of the letter in Parviz's car when she was arrested. And, notably, the letter submitted to the passport office misspelled Barker's middle name.

On this record, a rational trier of fact could find that the use of Barker's "means of identification"—namely, his name, NPI, and registered nursing number—was central to the fraudulent letter's objective of establishing a medical excuse from the State Department's regulation requiring a minor's personal appearance for a passport application. Citing a specific provision of the Foreign Affairs Manual, the letter used Barker's identity as a medical provider in expressly purporting to "document[]" that a relevant exception to the regulatory in-person requirement was applicable in light of C.P.'s "critical medical condition."

The letter thereby allowed Parviz to obtain C.P.'s passport. Further, because Parviz prepared the letter and forged Barker's signature, a rational jury could conclude that there was falsity as to "who" was making the critical misrepresentations contained in the letter. *See Dubin*, 599 U.S. at 132; *see also Hong*, 938 F.3d at 1051 & n.8 (holding that, even under a narrow construction of "use," it would extend to "tak[ing] some other action on another person's behalf through impersonation or forgery" (simplified)).

We reject Parviz's suggestion that Barker's limited involvement in the letter warrants a different conclusion. Although Barker conceded at trial that he "knew [Parviz's] intent" to submit a letter from him in support of her attempt to get a passport for C.P. and that Parviz had communicated with him by text message about some of the things that she might say, Barker specifically denied writing or signing the letter. He further stated that he only wanted "to minimally help her out and appease her" and that Parviz "had her own ideas on what she wanted to do" with respect to the letter. He also stated that he knew that Parviz's submission of a letter might result in a call from the passport office, but he stated that he thought such a call would only be about whether he "knew her" and that he "had no idea that that call might be about [him] holding [him]self out as a medical provider to her daughter." On this record, a rational jury could find that, even if Barker provided some general assistance in connection with the letter, Barker was not aware of the exact contents of the final, forged letter and that he did not specifically agree to all of the particular false statements that were included in it. A rational jury could also find that Parviz fraudulently used Barker's means of identification to attach his name and medical position to the *particular* false assertions that were critical to the success of

the fraudulent passport application. In that respect, Parviz's impersonating use of Barker's identifying information in preparing the letter involved fraud as to "who" was making the false representations in the letter.

For the foregoing reasons, a rational jury could find that Parviz fraudulently misused Barker's identity in the letter, which was crucial to her securing a passport for C.P. We therefore hold that the evidence is sufficient to support a finding that Parviz's use of Barker's means of identification was at "the crux of [her] underlying criminality." *Dubin*, 599 U.S. at 122.

### III

Parviz separately contends that the phrase "without lawful authority" in § 1028A "must mean more than 'used illegally,' because the premise of the statute is that a predicate offense has been committed." In Parviz's view, because she used Barker's means of identification "with his complicity," she did not use such means "without lawful authority." Accordingly, in the district court, Parviz objected to the Government's proposal that the instructions should state that "the government need not establish that the means of identification was used without the other person's consent." Parviz also moved for a judgment of acquittal on this ground, and the Government opposed the motion, arguing again that it was not required to prove that Barker had not consented to the use of his identification. In the arguments before the district court, Parviz acknowledged the Ninth Circuit authority on which the Government's requested instruction was based, but she contended "that the case law is wrongly decided [and] that the Ninth Circuit has misinterpreted the statute." The district court rejected Parviz's construction of the statute and instructed the jury on

this point as requested by the Government. The district court also denied her motion for a judgment of acquittal on this ground. We conclude that the district court did not err.

In *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015), we held that the language of § 1028A "clearly and unambiguously encompasse[d] situations like the present, where an individual grants the defendant permission to possess his or her means of identification, but the defendant then proceeds to use the identification unlawfully." *Id*. at 1185. Other circuits have likewise held that "actual theft or misappropriation of the means of identification" is not an element of aggravated identity theft. *Id*.; *see also United States v. Reynolds*, 710 F.3d 434 (D.C. Cir. 2013); *United States v. Lumbard*, 706 F.3d 716 (6th Cir. 2013); *United States v. Retana*, 641 F.3d 272 (8th Cir. 2011); *United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010). *Dubin* explicitly declined to address the statutory meaning of "lawful authority." *See* 599 U.S. at 128 n.8 ("The Court need not, and does not, reach the proper interpretation of 'without lawful authority.'"). Because no intervening Supreme Court or en banc decision is "clearly irreconcilable" with *Osuna-Alvarez*, we remain bound by its construction of the phrase "without lawful authority" in § 1028A. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). And under *Osuna-Alvarez*, the district court's instruction was correct, and the evidence was sufficient to find that Parviz had used Barker's means of identification without lawful authority.

## IV

Parviz raises two challenges to her sentence, but we reject them both.

**A**

At sentencing, Parviz argued that her sentence should be reduced by giving her credit for the time that she served in Texas in connection with her conviction there for the attempted kidnapping of C.P. The district court did not abuse its discretion in rejecting this contention.

Section § 5K2.23 of the U.S. Sentencing Guidelines states that a "downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." U.S.S.G. § 5K2.23. Section 5G1.3(b), in turn, generally provides that, where a defendant is subject to an undischarged term of imprisonment for "another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3," then "the court shall adjust the sentence for any period of imprisonment already served on the undischarged term" for which the defendant will not receive credit from the Bureau of Prisons and shall order that the "sentence for the instant offense . . . run concurrently to the remainder of the undischarged term of imprisonment." *Id*. § 5G1.3(b). Parviz argues that her Texas attempted kidnapping conviction is relevant conduct under § 1B1.3 and that, but for the delay in bringing these federal charges, she would have received the benefit of § 5G1.3(b)'s instruction that she receive a sentencing adjustment to account for the time served in Texas with respect to that offense.

We conclude that we need not decide whether the attempted kidnapping counts as relevant conduct for

purposes of one of the relevant paragraphs of § 1B1.3. Even assuming that the Texas attempted kidnapping offense constitutes relevant conduct, we hold that the district court did not abuse its discretion in declining to apply the discretionary downward departure authorized by § 5K2.23. In calculating the applicable guidelines range for Parviz's passport fraud offense, the district court expressly rejected the Government's request for an *upward* departure to take account of the fact that the object of the passport fraud was to facilitate the planned kidnapping, and the court did so precisely because it did not see why it should "enhance a sentence for kidnapping when Ms. Parviz already has been sentenced for the very kidnapping that [the Government] seek[s] an enhancement on." The Government requested that departure because the fact of the attempted kidnapping would otherwise not be taken into account in setting Parviz's guidelines range. The district court then also concluded, however, that it should not depart *downwards* under § 5K2.23 in light of the Texas sentence. We cannot say that the district court acted unreasonably in concluding that, given that its calculation of the guidelines range did not *increase* the offense level in any way to account for the kidnapping, no downward adjustment was warranted to then give "credit" for this unaccounted-for aggravating factor. *See Gall v. United States*, 552 U.S. 38, 46 (2007) (holding that "the familiar abuse-of-discretion standard of review" applies to departure decisions).

Parviz insists that, had she been sentenced in this case before the Texas sentence had been fully served, an adjustment in her favor would have been required under § 5G1.3(b). But this argument overlooks the fact that, had the district court been required to apply such a downward adjustment under § 5G1.3(b), it might have reached a

2:21-cr-00293-SB   Document 224   Filed 03/19/25   Page 17 of 19   Page ID #:2602
USA v. PARVIZ 17

different conclusion as to the Government's request for an upward departure in light of the attempted kidnapping, which was otherwise not taken into account in setting the guidelines range. Moreover, Parviz's argument on this score overlooks the fact that the Government was not responsible for the delay here: as noted earlier, local Texas authorities alerted federal authorities to the passport issue only *after* Parviz had completed her sentence and sought to recover the items Texas authorities had seized from her.

## B

In setting the conditions of Parviz's supervised release, the district court imposed a special condition prohibiting Parviz from having any contact with C.P. Specifically, the district court's special condition states:

> The defendant shall not contact her biological daughter C.P., by any means, including in person, by mail or electronic means, or via third parties. Further, the defendant shall always remain at least 100 yards from C.P. If any contact occurs, the defendant shall immediately leave the area of contact and report the contact to the Probation Officer.

The court expressly imposed this additional restriction on top of the permanent injunction already imposed against Parviz by a Texas state court, which prohibits Parviz from contacting C.P. or coming within 500 feet of her. The district court stated at sentencing that, if the Texas injunction were to be lifted or modified in some way, Parviz could then request a modification of this special supervised-release condition. On appeal, Parviz challenges both the procedural and substantive reasonableness of this special condition. We

find no abuse of discretion. *United States v. King*, 608 F.3d 1122, 1130 (9th Cir. 2010).

As a procedural matter, the district court adequately "provide[d] a sufficient explanation to 'permit meaningful appellate review' and [to] communicate 'that a reasoned decision has been made.'" *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012) (quoting *United States v. Carty*, 520 F.3d 984, 992–93 (9th Cir. 2008) (en banc)). The district court explained that it was "blatantly obvious" that such a condition was "warranted" in light of the circumstances of the case, which the district court noted involved an effort to get a passport "as part of an elaborate scheme to kidnap" C.P. Parviz contends that the challenged condition "implicate[s] a particularly significant liberty interest" and that, as a result, the district court was required under *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008), to "follow additional procedures and make special findings" before imposing such a condition. *Id*. at 1005. This contention fails because, in light of the Texas courts' complete termination of Parviz's parental rights with respect to C.P., and their imposition of a permanent injunction barring her from contacting C.P., Parviz no longer had any cognizable "significant liberty interest" as far as C.P. was concerned. *Id*.

The substantive reasonableness of the district court's condition is apparent from the record. Twice in 2019, Parviz attempted to use false documents to regain physical custody of C.P., and the particular scheme involved in this case was aptly described by the district court as "elaborate." The challenged condition is appropriate and necessary to protect C.P. and her foster family from Parviz.

\*     \*     \*

For the foregoing reasons, we affirm Parviz's conviction and sentence.

**AFFIRMED.**