United States Attorney
DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
Terrorism and Export Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631/8692
    Facsimile: (213) 894-2927
    Email:    Kathrynne.Seiden@usdoj.gov
                 Jenna.Long@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-293-SB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL; DECLARATION OF JENNA W. LONG; EXHIBITS A-F |
| v. | |
| MAHSA PARVIZ, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jenna W. Long, hereby files its opposition to defendant Mahsa Parviz's Motion for New Trial pursuant to Fed. R. Crim. P. 33, 37 and Fed. R. App. P. 12.1, and Request for Counsel pursuant to 18 U.S.C. § 3006A (Dkt. No. 211).

//

//

1  This opposition is based upon the attached memorandum of points and authorities,
2  the declaration of Jenna W. Long and exhibits A through F attached hereto, the files and
3  records in this case, and such further evidence and argument as the Court may permit.

4  Dated: May 16, 2025                    Respectfully submitted,

5                                         BILAL A. ESSAYLI
                                          United States Attorney
6
                                          DAVID T. RYAN
7                                         Assistant United States Attorney
                                          Chief, National Security Division
8

9                                          /s/ *Jenna W. Long*
                                          JENNA W. LONG
10                                        Assistant United States Attorney

11                                        Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant's motion for new trial is merely another among her numerous meritless attempts to disrupt her lawful conviction and sentence, this court should deny defendant's motion in its entirety, including her request for appointment of counsel. Defendant's motion was untimely and fails at every stage of inquiry.

## II. STATEMENT OF FACTS

### A. Defendant's Crimes and Conviction

This Court presided over defendant's trial resulting in the instant convictions and has decided numerous post-conviction challenges of those convictions making the Court exceedingly familiar with the facts of this case. As such, this opposition does not repeat the facts that are laid out in detail in numerous other filings, supported by the attendant exhibits. (E.g., Dkt. Nos. 84[1], 155, 179; PSR[2].) But briefly, in December 2018, the state of Texas terminated defendant's parental rights[3] over her biological child, C.P., and prohibited her from having any contact whatsoever with C.P. (Tr. Exs. 8–9; Dkt. Nos. 179-2 at 4, 8-9 and 179-3 at 9.) Defendant appealed the decision and lost. (Tr. Exs. 10–11; Dkt. No. 179-4 at 1, 24.) During the pendency of the termination proceedings, defendant provided "false and misleading information to the Superior Court of California, County of Los Angeles" which included claiming C.P. resided with her and the California order was devoid of subject matter jurisdiction. (Dkt. No. 179-5 at 3–4,

---

[1] The government lodged a CD containing all trial exhibits with its opposition to defendant's first motion for new trial in 2022. (See Dkt. 83 (notice of manual filing).) If asked, the government can resubmit those exhibits for the Court's review of the instant motion.

[2] United States Probation and Pretrial Services submitted an amended presentence report on July 15, 2022, at this Court's direction. "PSR" refers to this report followed by the applicable paragraph numbers.

[3] C.P.'s biological father is an individual with initials B.M. (Tr. Exs. 8–9; Dkt. No. 179-2 at 2.) B.M. voluntarily relinquished his parental rights to C.P. by affidavit dated December 3, 2018. (Tr. Ex. 8 at 2, 6; Dkt. No. 179-2 at 2, 6; PSR ¶ 61.) On this basis, the Texas Court terminated B.M.'s parent-child relationship with C.P. (Id.) The termination of B.M.'s parental rights was included in the same order terminating defendant's parental rights. (Tr. Ex. 8 at 2, 6; Dkt. No. 179-2 at 2, 6.)

7–8.) The decision vacating the invalid foreign judgments, which the defendant obtained by fraud, reaffirmed that Collin County had "continuing and exclusive jurisdiction" over C.P. "at all relevant times" despite defendant's attempts to claim the contrary. (Id. at 2, 7–9.)

      Undeterred by the numerous decisions denying defendant's attempts to subvert the termination of her parental rights, defendant used various illegal means to try to regain custody of C.P., including presenting for enforcement a judicial order for a writ of attachment which falsely stated she was entitled to custody of C.P. (Tr. Exs. 12–13; Dkt. Nos. 142 at 211 and 179-6; PSR ¶ 37.) Defendant also filed various out-of-state (and false) domestic violence restraining order applications with the goal of obtaining judicial orders putting C.P. in her custody and accused C.P.'s biological father of kidnapping C.P. despite C.P. remaining in the care of the foster family designated by the Texas authorities. (Dkt. Nos. 111-3; 111-1 ¶¶ 6-7; PSR ¶ 44.)

      After she was arrested in connection with the forged writ (and while on supervision for other prior felony convictions), defendant absconded to California, where she submitted a passport application for C.P., falsely representing herself as C.P.'s legal parent. (Tr. Ex. 46; Dkt. No. 179-7; PSR ¶¶ 7, 35–37, 42.) Defendant also submitted a false letter with a forged signature from a medical provider claiming that C.P. was in their care and needed emergency medical care overseas, and that C.P. could not appear for the passport application without risk to her health. (Tr. Ex. 46; Dkt. No. 179-8 at 9; PSR ¶ 8.) After fraudulently obtaining a passport for C.P., defendant returned to Texas, where she attempted to kidnap C.P. from her legal guardian, while planning to leave the country. (Dkt. 179-9; PSR ¶¶ 30, 38.) Defendant was arrested, convicted, and sentenced to 500 days in jail. (PSR ¶ 38.) On her release, she tried to get C.P.'s passport back from Texas authorities, prompting the investigation that led to the instant case. (Dkt. 144 at 99–101.)

      Before defendant's federal trial, the government produced over 12,000 pages worth of discovery including certified records and transcripts from the Collin County

Texas court proceeding terminating defendant's parental rights. (See Declaration of Jenna W. Long ("Long Decl.") ¶¶ 2–4, Exs. A and B.) After a three-day jury trial, defendant was convicted of making false statements in an application for a U.S. passport, in violation of 18 U.S.C. § 1542, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Dkt. 69.) Since her conviction, defendant has repeatedly and unsuccessfully challenged her conviction and sentence. (See Dkt. No. 225 at 2–3 (summarizing defendant's various challenges)).

### B. Defendant's Instant Motion for New Trial

On January 14, 2025,[4] after defendant's direct appeal of her conviction was submitted and awaiting decision, defendant filed a motion for new trial pursuant to Fed. R. Crim. P. 33 and requested appointment of counsel pursuant to 18 U.S.C. § 3006A. (Dkt. No. 211.) In her motion, defendant claimed she is entitled to a new trial based on newly discovered evidence. (Dkt. No. 211 at 1.) Defendant's motion relies on a declaration and exhibits defendant filed in April 2024. (Dkt. Nos. 196 and its exhibits appearing at Dkt. Nos. 197, 199, and 201.) In that declaration, defendant claims she is not guilty of the offenses because she has "full parental rights to [her] daughter C.P." (Dkt. No. 196 ¶ 2.) She also claims the affidavit in which B.M. voluntarily relinquished his parental rights was fraudulent, in that it claimed B.M. resided in Collin County in order to confer jurisdiction on a judge in that county, with whom defendant claims B.M.'s family had personal ties, and this affidavit was "accessible and possessed by the Government" before defendant was indicted, but only recently obtained by defendant. (Dkt. No. 196 ¶ 3–5.)

Defendant's motion does not explain how she recently obtained the affidavit, nor why she was unable to obtain it earlier. (Dkt. No. 211). In 2023, in a habeas proceeding defendant filed in the United States District Court for the Western District of Washington, defendant sought subpoenas for this affidavit and property records for the

---

[4] According to the postmark, this was mailed on January 10, 2024. (Dkt. No. 211 at 12.)

3

1  address B.M. listed in the affidavit. Parviz v. Barron et al., No. 2:23-CV-1407-JHC
2  (W.D. Wa.), Dkt. No. 4 (a copy of which is included in this filing as Ex. E for the
3  Court's convenience). In the same proceeding, in February 2024—11 months before
4  defendant filed the instant motion—defendant complained of the same alleged "fraud"
5  within the December 2018 affidavit. Parviz, No. 2:23-CV-1407-JHC, Dkt. No. 29 (a
6  copy of which is included in this filing as Ex. F for the Court's convenience).

In August 2018, in a handwritten filing in the family court case concerning defendant's parental rights, defendant claimed the same "fraud" she now alleges is newly discovered evidence, namely that B.M. lied in claiming to be a resident of Collin County, Texas. (Long Decl. ¶ 5, Ex. C at 3.)[5] In that 2018 motion, defendant claims B.M. "does not have parental rights." (Id.) Using another fraudulent filing by defendant (this one in California), defendant claimed California had jurisdiction over C.P., and therefore the custody case as well. (See Dkt. No. 179-5 at 7–9.)

On February 18, 2025, this Court deferred consideration of the instant motion until defendant's appeal was resolved. (Dkt. No. 219.) In March 2025, the Ninth Circuit affirmed both her conviction and sentence. See United States v. Parviz, 131 F.4th 966 (9th Cir. Mar. 19, 2025).

### III. LEGAL STANDARD

The standard for granting a Rule 33 motion is stringent.

> To prevail on a Rule 33 motion for new trial based on newly discovered evidence, a defendant must satisfy a five-part test: '(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal.'

United States v. Harrington, 410 F.3d 598, 601(9th Cir. 2005) (quoting United States v. Kulczyk, 931 F.2d 542, 548(9th Cir.1991)).

---

[5] In February 2018, a Denton County Texas court transferred a suit affecting parent-child relationship to Collin County finding that Collin County "has exclusive, continuing jurisdiction of the child." (Long Decl. ¶ 6, Ex. D.)

4

Courts should grant Rule 33 motions only "in exceptional circumstances in which the evidence weighs heavily against the verdict." United States v. Del Toro-Barboza, 673 F.3d 1136, 1153 (9th Cir. 2012). The rule also imposes a time limit in which the motion must be filed—three years from the verdict. Fed. R. Crim. P. 33(b)(1).

## IV.  ARGUMENT

Defendant's motion fails every part of the five-part test. The evidence is not newly discovered, and any failure to discover it before trial was due to defendant's lack of diligence. She advanced (and lost) the same claim of fraud affecting jurisdiction in Texas family court in 2018 that she now makes to this Court. The evidence was not material to issues at trial and was arguably only impeaching of another judicial finding at best, although there is nothing before to Court to imply it would have altered the termination of defendant's parental rights since the claimed fraud within the affidavit is an address and County of an individual who was voluntarily relinquishing his own parental rights independent of the termination of defendant's. There is no reason before this Court to believe the verdict would be altered—defendant's parental rights remain terminated by Texas courts today and her criminal conduct was broader than that.

### A.   Defendant's Motion for New Trial Should Be Denied as Untimely

Defendant's guilty verdict was reached on December 16, 2021. (Dkt. No. 69.) The instant motion was filed on January 14, 2025, and postmarked January 10, 2025. (Dkt. No. 211 at 12.) That is more than three years after the verdict and therefore not within the time limit proscribed by the rule. Fed. R. Crim. P. 33(b)(1). Conveniently, when defendant signed the motion, she dated it December 13, 2024—nearly a month before the postmark—which is one day shy of three years after her trial began. But the date defendant writes does not control. See, e.g., Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) (explaining the "mailbox rule"). The indications from the mailing and filing is that this filing was not timely, defendant has provided nothing to demonstrate otherwise. However, defendant had the materials she presents well before the three-year period elapsed. The appraisal records defendant filed, ostensibly in an attempt to claim

5

the affidavit is fraudulent, were certified on March 4, 2020 (although it includes records dated in 2022).[6] Defendant filed the allegedly fraudulent affidavit with this Court in April 2024[7]—nine months before she filed a motion for new trial based on it and had obtained it even earlier. (Dkt. Nos. 197 and 199; Ex. F.) Meaning, well before the three-year period expired, defendant had the evidence she relies on, which cannot excuse the motion's untimeliness. As such, defendant's motion should be denied as untimely.[8]

**B.   The Claimed Evidence is Not Newly Discovered**

Defendant was aware of and argued the exact same claim she now advances more than two years <u>before</u> she was arrested for the instant offenses. It is not newly discovered. See <u>Harrington</u>, 410 F.3d at 601 (holding that defendant's knowledge of testimony at issue meant it was not newly discovered); see also <u>United States v. Hinkson</u>, 585 F.3d 1247, 1264 (9th Cir. 2009) ("while newly written, [the affidavits] did not provide any new *information*" and the court's determination that it was not newly discovered was "logical and plausible" (emphasis in original)).

At present, defendant claims B.M. committed fraud by claiming he resided in a county in which, defendant claims, he did not, specifically to "confer jurisdiction" on a particular court. (Dkt. 196 ¶ 3.) In 2018, before defendant even committed the instant offenses, and years before she was charged and arrested, defendant sought dismissal of the custody case in Texas claiming that the Texas Court had no jurisdiction because B.M. "committed fraud upon the Court in claiming that [he] is a resident of Collin

---

[6] The internally inconsistent dates on these records gives the government significant pause given defendant repeated use of fraud to achieve her unlawful goals. The government would need additional time to independently verify the authenticity of these documents, however even if they are accurate they do not make defendant's meritless claim otherwise attain merit. This Court is not the proper court to determine the validity of a voluntary relinquishment affidavit or whether a certain county in Texas has jurisdiction over a child custody proceeding.

[7] Defendant claimed this affidavit was fraudulent at least as early as February 2024, nearly a year before the instant motion was filed. (<u>See</u> Ex. F; Dkt. No. 185 at 2.)

[8] The time limit of Rule 33 is a claim-processing rule, not jurisdictional. See <u>Eberhart v. United States</u>, 546 U.S. 12, 16 (2005). Should defendant attempt to justify the lateness or claim "excusable neglect," the government requests an opportunity to respond further in writing.

County, Texas." (Ex. A at 2.) She claimed he resided in Dallas County. (Id.) This is substantively the same fraud defendant claims now, seven years later.

Even if defendant did not have a copy of the December affidavit before trial, this was only due to her own failure to exercise due diligence. See Harrington, 410 F.3d at 601 (holding the evidence claimed to be newly discovered "could have been obtained at any time."). It is plain she was aware of the affidavit. It is referenced in the order terminating her parental rights (which she was aware of before her false statements shown at trial) and which the government produced shortly after her arrest in the instant matter. (Long Decl. ¶ 3.) This is consistent with the evidence that shows defendant had knowledge of the affidavit and its contents before her claimed receipt. (See Ex. E, dated September 18, 2023, seeking a subpoena for the affidavit and also requesting records for the precise address in the affidavit—evincing defendant knew what address was listed in the affidavit before she received the affidavit). Any failure to obtain the affidavit sooner reflects a lack of due diligence on defendant's part given her knowledge of its existence, contents, and her prior claims of the same "fraud."

Despite defendant's claim to the contrary, the government produced every record it received from the Texas proceedings. (Long Decl. ¶ 2.) Given her personal involvement in the proceedings, defendant—not the government—would have more knowledge about these proceedings and any related filings or jurisdictional claim in her Texas case. Defendant has offered no reason to this Court why she could not have obtained the 2018 affidavit before her trial commenced three years after its creation, especially since discovery provided put her on notice of its existence. See, e.g., United States v. Cimera, 459 F.3d 452 (3d Cir. 2006) (not entitled to a new trial for failing to carefully inspect evidence); United States v. Time, 21 F.3d 635, 642 (5th Cir. 1994) (defendant's awareness of a connection meant it could have been discovered the evidence before trial); United States v. LaVallee, 439 F.3d 670, 701 (10th Cir. 2006) (finding lack of due diligence where no attempt was made to interview witness before trial). Defendant's knowledge, prior claims, and references to it in produced discovery

demonstrates multiple reasons why, had defendant exercised due diligence, she could have obtained it prior to trial.

### C. Defendant's Claim is Without Merit

Had defendant exercised due diligence and obtained this affidavit before her trial, the result would be the same. This affidavit is immaterial to defendant's convictions and does not constitute *Brady* material.[9] In fact, it is unclear if defendant's claim would even be material in the underlying parental rights termination proceeding in Texas. There is no claim that B.M. did not intend to relinquish his rights, nor is their evidence that his voluntary relinquishment caused or resulted in the termination of defendant's parental rights (which was based on unrelated conduct by defendant (see Tr. Exs. 8–9; Dkt. Nos. 179-2 at 4, 8-9 and 179-3 at 9)), or that this would have affected that Texas case at all.[10] Critically, this Court would not have the jurisdiction to reverse the termination of defendant's parental rights by the Collin County, Texas court even if every single one of defendant's unsubstantiated claims were true. The proper avenue to challenge the validity of B.M.'s relinquishment of his parental rights (even though there is no evidence

---

[9] The government produced every document received from its numerous requests to Texas courts. (Long Decl. ¶ 2.) According to the transcript this affidavit was discussed and handed to the family court judge during the proceeding, but it is not then within the attached reporter's record. (Long Decl. ¶ 2; Ex. B.) Defendant has not explained her basis to claim the government had this is its possession, nor how she obtained it—which could explain if it was obtainable in advance of trial. But this is irrelevant to this Court's decision because it is immaterial to defendant's convictions. Defendant's parental rights were terminated before her false statements, her false statements were not limited to her parental rights, and the termination of her parental rights was upheld on appeal and there is no reason to believe that doesn't persist.

[10] Jurisdiction was determined by jurisdiction over the child according to the orders of the court. (Ex. D; Dkt. 179-5 at 9.) Therefore, B.M.'s residence may not have altered jurisdiction and B.M. may well have resided at the address listed (the deed being in someone else's name—which may be his relative—does not mean B.M. did not reside there). Defendant did not prevail in her motion to dismiss the proceeding for lack of jurisdiction challenging whether B.M. did reside at that address. Finally, the fact that B.M. listed Collin County, which based on online research is a neighboring county to Denton—the county defendant seems to claim is the county that should have been listed. Frisco (the city the residential address is in) straddles Denton and Collin counties, and given that, it is such a minor point, even if that is inaccurate there is no evidence it would invalidate his relinquishment or the affidavit.

8

that would have changed the outcome of the termination of defendant's own parental rights) would be through the Texas court system.

There is also not definitive evidence before this Court that the affidavit is not accurate. The property records filed by defendant list individuals with the same last name as B.M. (Dkt. No. 201 at 3–10.) Even without that connection, property records do not always list the resident (for example, a tenant or if someone is staying with family). Defendant also highlighted that it says Denton not Collin County, which are neighboring counties, and Frisco (the city listed) straddles both counties. There is nothing before the court to suggest a minor detail like this invalidated this affidavit or the voluntary relinquishment therein. This Court is not the forum to litigate the veracity or significance of this in any event.

Even if, defendant successfully regained her parental rights today or in the future, it does not mean that her rights had not been terminated (a decision upheld on appeal) at the time she made false statements to get C.P. a passport so she could kidnap her. A later change in her parental rights in 2025 would not have excused her actions in 2019 and would not have made her false statements true (the conduct underlying her federal conviction). Her false statements also went beyond C.P.'s legal parentage.

This affidavit would not have impeached any witness. It would only arguably cause a jury to be confused or improperly substitute their opinion for the judgment of the Texas court that terminated defendant's parental rights. This is of even less value than something that is "merely impeaching," which is still not sufficient to justify a new trial. See Harrington, 410 F.3d at 601 (holding inconsistencies that did not render testimony "wholly incredible" is insufficient) citing United States v. Davis, 960 F.2d 820, 825 (9th Cir. 1992). This is especially true because defendant's false statements (and her unlawful use of another's identity) were not exclusively based on defendant's lack of parental rights. Claiming she was C.P.'s legal parent was one of defendant's many false statements. It would defy logic to believe an issue with an underlying affidavit about someone else's parental rights would result in defendant's acquittal on both charges.

Several of defendant's false statements, and her use of a medical provider's identity, are independent of her lie about parentage. Those lies would still be lies even if she succeeded in a challenge of the termination proceedings concerning another person's voluntary relinquishment. A new trial, even with this affidavit would undoubtedly produce the same result. Defendant is trying to use what would be a separate legal issue to disrupt her instant convictions, which is impermissible. See United States v. Hanoum, 33 F.3d 1128, 1130 (9th Cir. 1994) ("newly discovered evidence must generally, if not always, be evidence related to the issues at trial, not evidence concerning separate legal claims . . ."). This affidavit does not relate to the elements of the offenses of conviction and is therefore insufficient to justify a new trial. Id. at 1131.

### D. This Court Should Similarly Deny Defendant's Request for Appointment of Counsel

Defendant has no right to appointment of counsel because "after the completion of the direct appeal of a federal conviction, appointment of counsel for a motion for a new trial is not constitutionally guaranteed." United States v. Harrington, 410 F.3d 598, 600 (9th Cir. 2005). As the Court explained in Harrington, a motion for new trial based upon newly discovered evidence is "in essence a collateral attack." 410 F.3d at 601. That same reasoning applies here regardless of whether defendant filed her motion before or after the decision was issued in her direct appeal, it was without question filed after her appeal was filed. Moreover, because defendant's motion is untimely and would not disrupt the convictions even if her claim of fraud was true—which the record belies—the appointment of counsel would not assist the assessment in this matter.

### V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in its entirety, including her request for appointment of counsel.

The undersigned, counsel of record for Plaintiff United States of America, certifies that this brief contains 10 pages, which: __ complies with the word limit of L.R. 11-6.1. _X_ complies with the page limit set by court order dated May 7, 2025.

Dated: May 16, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

 /s/ *Jenna W. Long*
JENNA W. LONG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA